UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STERLING M. ENTERPRISES, INC. D/B/A LEE's DELI,<br><br>Plaintiff,<br><br>v.<br><br>LEE'S SANDWICHES INTERNATIONAL, INC.,<br><br>Defendant. | No. C 05-04477 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Motion for Preliminary Injunction** |

    Plaintiff Sterling M. Enterprises, Inc. filed this lawsuit seeking to prevent defendant Lee's Sandwiches International, Inc. from opening a restaurant named "Lee's Sandwiches" in the Civic Center neighborhood of San Francisco, California. Now before the court is plaintiff's motion for a preliminary injunction. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

    Plaintiff has operated one or more restaurants named "Lee's Deli" in San Francisco's Financial District since 1987. Declaration of Leroy M. Quan in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction ("Quan Dec.") ¶¶ 3–5. Lee's Deli sells sandwiches and other lunch fast food at low prices, catering primarily to Financial District

clients who wish to obtain a quick takeout lunch. Id. ¶¶ 8–10. Plaintiff currently operates eleven Lee's Delis, all of which are located in the Financial District. Id. ¶ 5. Plaintiff also provides catering services to a number of clients located throughout San Francisco. Id. ¶ 33.

In 1987 plaintiff filed a "fictitious business statement" in San Francisco County for use of the business name "Lee's Deli." Id. ¶ 6. In 1999 plaintiff obtained state trademark registration for "Lee's Deli." Id. ¶ 7. Plaintiff has not pursued federal registration of its business name.

Defendant operates a chain of sandwich stores named "Lee's Sandwiches." Declaration of Chieu Le ("Le Dec.") ¶ 4. Defendant's original store, called "Lee Sandwiches and Deli," opened in San Jose, California, located roughly 50 miles south of San Francisco, in 1983. Id. Currently defendant operates twenty-six Lee's Sandwiches stores in three states—California, Arizona and Texas. Defendant now plans to open a Lee's Sandwiches restaurant in the Civic Center neighborhood of San Francisco, located roughly two miles from the Financial District.

Defendant applied for federal registration of the word mark "Lee's Sandwiches" in 2004 and received federal registration on October 4, 2005. See U.S. SM No. 3,004,517. Defendant also filed a fictitious business statement in Santa Clara County for use of the name "Lee's Sandwiches" in 2001. Id. Exh. A.

LEGAL STANDARD

"A preliminary injunction is a provisional remedy, the purpose of which is to preserve status quo and to prevent irreparable loss of rights prior to final disposition of the litigation." Napa Valley Publ'g Co. v. City of Calistoga, 225 F. Supp. 2d 1176, 1180 (N.D. Cal. 2002) (Chen, Mag. J.) (citing Sierra On Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984)). In light of these considerations, a plaintiff seeking preliminary injunctive relief must demonstrate either: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits [have been] raised and the balance of hardships tips sharply in [the plaintiff's] favor." Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) (per curiam) (citing Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)); see also Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115,

2

1119 (9th Cir. 1999). The components of these two tests, together with the added consideration of the public interest, operate on a sliding scale or "continuum." Southwest Voter Registration Educ. Project, 344 F.3d at 918. Consequently, "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." Id. (citation omitted); see also Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994) (en banc).

As in any other civil proceeding, the likelihood of success on the merits and the balance of hardships are the critical considerations in determining whether a preliminary injunction should issue in a trademark infringement action. See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1406 (9th Cir.), cert. dismissed, 521 U.S. 1146 (1997). To prevail on the merits of a trademark infringement claim, a plaintiff must establish "that the defendant's use of its mark gives rise to a 'likelihood of confusion' in the consuming public." Metro Publ'g, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993) (quoting E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992)). "Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999) (quoting Metro Publ'g, 987 F.2d at 640). Such an injunction may issue even if the plaintiff's mark has not been registered with the PTO. Metro Publ'g, 987 F.2d at 640 (citing New West Corp. v. NYM Co., 595 F.2d 1194, 1198 (9th Cir. 1979)) ("It is not necessary that a trademark be registered in order for it to qualify for protection under the Lanham Act").

DISCUSSION

I.    Likelihood of Success

Plaintiff faces two disadvantages at the outset, which it must overcome in order to prevail on the merits of its infringement claims. First, defendant, not plaintiff, is the owner of a federally registered mark. Defendant's registration, if valid, supersedes plaintiff's state law trademark rights entirely and limits plaintiff to its common law rights. Minuteman Press Int'l, Inc. v. Minute-Men Press, Inc., 219 U.S.P.Q. 426, 432 (N.D. Cal. 1983) (Williams, J.); see generally McCarthy on

3

Trademarks and Unfair Competition § 22:2 (4th ed. 2005) [hereinafter McCarthy].  Second, defendant is apparently the senior user, as it began use of "Lee Sandwiches and Deli" in 1983—some four years before plaintiff began to use "Lee's Deli."

### A.     Federal Registration

Plaintiff's complaint includes claims that defendant's trademark registration should be cancelled, but plaintiff does not offer a coherent argument for cancellation in its motion for a preliminary injunction.  According to plaintiff, the validity of defendant's federal registration is suspect because the name of defendant's first store—"Lee Sandwiches and Deli"—is not identical to "Lee's Sandwiches."  Plaintiff also suggests that one piece of evidence offered by defendant, a photograph of the Lee Sandwiches and Deli storefront, is confusingly labeled "Lee's Sandwiches KingRd. [sic] 1983" when in fact the photograph may have been taken much later.  Le Dec., Exh. B. Plaintiff argues that the factual uncertainty surrounding the date of defendant's use of the precise name "Lee's Sandwiches" raises a "question" as to the validity of defendant's registration.  Given that plaintiff has the burden of proving invalidity by clear and convincing evidence, as well as the burden of establishing the requisite likelihood of success in order to prevail on a motion for a preliminary injunction, raising a question is not enough.  The court therefore finds, for purposes of deciding this motion, that defendant's federal registration is likely to be valid.

### B.     Priority of Use

Based on the same alleged factual uncertainty as to the date of defendant's use of the precise name "Lee's Sandwiches," plaintiff argues that "it is possible" that its undisputed use in 1987 of Lee's Deli may establish plaintiff as the senior user.  As with plaintiff's argument regarding the validity of defendant's registration, merely injecting doubt as to defendant's status as the senior user is not sufficient to meet plaintiff's burden in seeking a preliminary injunction.  Plaintiff has not actually provided any affirmative evidence contradicting defendant's claim that it has used "Lee Sandwiches and Deli" continuously since 1983.

4

In any case, based on the finding that defendant's federal registration is likely valid, plaintiff's rights do not depend in any significant way on whether it is the senior or junior user. The rights of a junior user against a senior federal registrant are governed by the so-called "intermediate junior user" exception to the federal registrant's exclusive nationwide rights. 15 U.S.C. § 1115(b)(5); see Burger King of Fla., Inc. v. Hoots, 403 F.2d 904 (7th Cir. 1968) (cited with approval in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 346 n.4 (9th Cir. 1979)); see generally McCarthy § 26:44. Under the intermediate junior user exception, plaintiff may have acquired the exclusive right to use its mark only "for the area in which the mark was used prior to such registration." 15 U.S.C. § 1115(b)(5).

The rights of a senior user against a junior federal registrant are governed by 15 U.S.C. section 1065, which preserves common law trademark rights predating a federal registration. Under cases interpreting section 1065, a senior user may be entitled to rights in the "actual trade area" as of the date of the federal registration. Weiner King, Inc. v. Wiener King Corp., 407 F. Supp. 1274, 1279 (D.N.J.), rev'd on other grounds, 192 U.S.P.Q. 353 (3d Cir. 1976), cert. denied, 430 U.S. 916 (1977); McCarthy §§ 26:53–54. The geographic scope of protection under sections 1115(b)(5) and 1065 is therefore quite similar, and is limited to plaintiff's area of actual use.

### C. Area of Actual Use

The parties disagree as to the extent of plaintiff's actual trade area. Defendant argues that the only area where plaintiff actually has used its mark, and continues to actually use its mark, is the Financial District. Plaintiff argues that its territory encompasses all of San Francisco.

The parties do not dispute that all of plaintiff's physical storefronts are in the Financial District. Plaintiff offers several factual arguments in favor of broader geographic coverage. First, plaintiff claims to have pursued locations in other parts of San Francisco for the past four years. Declaration of Jonathan Blatteis in Support of Application for Temporary Restraining Order and Preliminary Injunction ("Blatteis Dec.") ¶ 4. Second, plaintiff claims that its customers, who work or perform deliveries in the financial district, live all over the Bay Area. Quan Dec. ¶ 21. Third, plaintiff allegedly makes donations to charitable organizations outside the financial district. Id. ¶ 37.

1  Finally, plaintiff includes evidence that it maintains catering clients throughout San Francisco,
2  including the Civic Center neighborhood.  Id. ¶ 33.
3       With respect to plaintiff's first argument, plaintiff does not explain how its alleged attempts
4  to expand beyond the financial district, all of which have come to naught, are relevant to determining
5  the extent of plaintiff's actual use.
6       Plaintiff's evidence supporting its second and third arguments in favor of a geographically
7  broad reputation—the fact that customers may reside throughout the Bay Area and the fact that
8  plaintiff has made charitable donations in other parts of San Francisco—is much less substantial than
9  the evidence rejected as inadequate by the appellate court in Weiner King.  In Weiner King, the
10 plaintiff, which operated a chain of hot dog restaurants in New Jersey, presented statistical evidence
11 that many of its customers were drivers en route to destinations throughout New Jersey and in other
12 states.  192 U.S.P.Q. at 355.  The district court found that this evidence, coupled with the
13 observation that New Jersey is a "corridor state" for drivers with more distant destinations, supported
14 a finding that the plaintiff's market encompassed the entire state.  Id.  The court of appeals rejected
15 plaintiff's evidence as inadequate, noting *inter alia* that plaintiff had failed to establish "that an
16 individual from a particular [remote] geographical area patronized plaintiff's establishment because
17 of plaintiff's reputation."  Id. at 356.  Here, plaintiff has submitted no statistical evidence of any
18 kind, and has failed to present any evidence that its patrons "spoke of or extolled plaintiff or
19 plaintiff's reputation in their home communities."  See id.  To the extent that plaintiff is relying on
20 the breadth of its reputation—inherently a slippery concept—the current sparse factual record does
   not provide the level of certainty required to issue an injunction.
21      Moreover, plaintiff's argument, if accepted, proves too much.  Defendant started out with its
22 first restaurant in San Jose.  During out the time period in question, defendant opened up and
23 operated several other restaurants in San Jose and other South Bay cities, all of which are located
24 within commuting distance of San Francisco's Financial District.  At the present time defendant has
25 approximately twelve restaurants in the San Jose/South Bay region, including Cupertino, Milpitas,
26 Fremont and Hayward.  The court is unaware of any authority permitting the non-registrant to claim
27 common law rights in a federal registrant's area of actual use.
28

Finally, plaintiff offers evidence of as many as twenty catering customers located outside of the Financial District. Quan Dec. ¶ 33 & Exh. 13. Plaintiff is somewhat vague as to the frequency with which it has provided catering services to these customers, noting that "[p]laintiff has delivered prepared food on more than one occasion over the past two years" to each of the listed catering customers and claiming that "[s]ome of these business customers can be considered 'regular' customers." Id. ¶ 33. However, a review of Exhibit 13 shows only twenty-one deliveries within a two-year period, 2003-2005, and not one repeat customer. It is doubtful that plaintiff's evidence of catering to customers outside the financial district would be sufficient to defeat a motion for summary judgment; it certainly is not sufficient to establish a likelihood of success on the merits of plaintiff's trademark infringement claim.

In addition to the previously discussed factual arguments, plaintiff has advanced a legal argument in its briefs and at oral argument that common law trademark rights should at a minimum extend to the entire city where the mark is actually used. In support of this claim, plaintiff argues that customers looking for a restaurant will typically use the phone book or internet, which will provide listings for the entire city of San Francisco. This argument lacks support in relevant precedent, as plaintiff has cited no statute or case which would suggest such a *per se* rule. The scope of an "actual trade area" is a fact-intensive determination and will vary from case to case. Plaintiff's argument is particularly inappropriate when applied to the chain of restaurants at issue in this case, which emphasize speedy walk-up service rather than distinctive cuisine. The type of facilities plaintiff owns attracts local pedestrian traffic. Plaintiff has offered no plausible reason why a customer in some other part of the city, whether finding plaintiff's restaurants in the phone book, hearing of them by word of mouth or having visited one of its stores in the Financial District, would cross the city or even travel from the Civic Center to the Financial District, in order to obtain a basic sandwich for lunch.

The court concludes that plaintiff has demonstrated, at best, a slight chance of success on the merits.

II.     Balance of Hardships

Given plaintiff's slim chances of success on the merits, plaintiff must show a balance of hardships that "tips sharply" in its favor. See Southwest Voter Registration Educ. Project, 344 F.3d at 917. Based on plaintiff's lack of market presence in the Civic Center neighborhood, the court finds that plaintiff will not suffer great immediate hardship if defendant is permitted to open its Civic Center restaurant. Defendant, on the other hand, will lose whatever cost it has incurred in planning the Civic Center restaurant, as well as any revenue attributable to that restaurant.

The court need not engage in a careful balancing of hardships in light of plaintiff's limited chance of success on the merits. It is sufficient to find that the balance of hardships does not tip sharply in plaintiff's favor.

CONCLUSION

For the above reasons the court hereby DENIES plaintiff's motion for a preliminary injunction.

IT IS SO ORDERED.

Date: January 30, 2006

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

8

ENDNOTES

1. Unless otherwise noted, background facts are taken from the declarations submitted with the parties' briefs.